IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BETTIE FETTERMAN THOMAS,          )
                                  )
                Plaintiff,        )
                                  )
        v.                        )          1:17CV337
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,                         )
                                  )
                Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Bettie Fetterman Thomas seeks review of a final decision of the Commissioner

of Social Security denying her claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). The Court has before it the certified administrative

record[1] and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in January, 2013 alleging a disability onset

date of January 1, 2011, later amended to October 18, 2012. (Tr. 144-45, 274-77, 294.) The

applications were denied initially and again upon reconsideration. (*Id.* at 118-143, 146-173.)

Two hearings were then held before an Administrative Law Judge ("ALJ") at which Plaintiff,

her attorney, and a vocational expert ("VE") were present. (*Id.* at 56-117.) On October 19,

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

2015, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 39-51.) On February 9, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 18, 2012. (Tr. 41.) The ALJ next determined at step two that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease, depression/mood disorder, anxiety disorder, and substance abuse disorder. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 42-44.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC"). (*Id.* at 44-49.) He determined that Plaintiff could perform light work with the following additional limitations:

> the claimant requires the flexibility of a sit-stand option, allowing for position changes at [thirty] minute intervals. She must avoid concentrated exposure to temperature extremes of cold/heat, humidity, pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation and the like, as well as workplace hazards, such as dangerous moving machinery and unprotected heights. She can understand and perform simple, routine, repetitive tasks. She can maintain concentration, persistence or pace to stay on task for [two]-hour periods over typical [eight]-hour workday, in low stress setting, further defined to mean no production-pace or quota-based work, rather goal-oriented job primarily dealing with things as opposed to people, with no more than occasional changes in work setting; no work with the public as part of job, such as sales or negotiation, though incidental or casual contact as it might arise is permissible

(*Id.* at 44.)

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (*Id.* at 49.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (*Id.* at 50-51.) Consequently, the ALJ found Plaintiff was not disabled under the Act. (*Id.* at 51.)

## IV. ISSUES AND ANALYSIS

Plaintiff argues that the ALJ committed reversible error by failing to find that Plaintiff's COPD met the criteria of Listing 3.02A. (Docket Entry 12 at 4.) For the following reasons, the Court disagrees.

Step three of the sequential analysis requires the ALJ to determine whether a claimant's impairment(s) meets or equals the medical criteria of 20 C.F.R., Pt. 404, Subpt. P, App'x. 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. 20 C.F.R. § 404.1520(d); *see also Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (internal quotations and citations omitted) ("A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition meets or equals the listed impairments."). The claimant has the burden of demonstrating that all of the criteria of a Listing are met. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

The introductory statements to the Listings for respiratory impairments explain that pulmonary function tests, including spirometry, are used to assess the severity of a claimant's respiratory disorder. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00D(1) (2017). Spirometry "measures how well [a claimant] move[s] air into and out of [his or her] lungs." *Id.* § 3.00E(1). Generally, spirometry testing

> involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC.

*Id.*

The regulations further provide that, "[d]uring testing, if your $FEV_1$ is less than 70 percent of your predicted normal value, we require repeat spirometry after inhalation of a bronchodilator[2] to evaluate your respiratory disorder under these listings, unless it is medically contraindicated. . . . We can use the results of spirometry administered without bronchodilators when the use of bronchodilators is medically contraindicated." *Id.* § 3.00E(2)(b).

Finally, the introductory language instructs,

> We use your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorder under 3.02B, regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers.

*Id.* § 3.00E(1). A claimant meets Listing 3.02A when she has a "$FEV_1$ (see 3.00E) less than or equal to the value in Table [I] for [his or her] age, gender, and height without shoes." *Id.* § 3.02A. Table I provides that a female of Plaintiff's height and age meets Listing 3.02A if her $FEV_1$ is less than or equal to 1.25. *Id.* § 3.02A (Table I).[3]

---

[2] A bronchodilator is "a drug that relaxes [the] bronchial muscle resulting in expansion of the bronchial air passages." MERRIAM–WEBSTER DICTIONARY, found at www.merriam-webster.com/dictionary/bronchodilator. Because bronchodilators open the airways, post-bronchodilator spirometry generally produces a claimant's highest $FEV_1$ values. *See Deane v. Colvin,* 247 F. Supp. 3d 152, 164 (D. Mass. 2017); *Blundell v. Colvin,* No. 1:15-CV-67, 2016 WL 4150887, at *3 (N.D. Ind. Aug. 5, 2016) ("A bronchodilator, by definition, is a drug that increases the volume of the lungs. It is therefore odd [when a claimant's] FEV $_1$ test score listed in the table indicates that her pre-test score was *higher* than her post-test score." (emphasis in the original)).

[3] The record shows that Plaintiff is sixty-three inches tall and that she was fifty-two years old when the spirometry report was conducted. (Tr. 640.) At the time of the ALJ's 2015 decision, Plaintiff would have needed an $FEV_1$ of less than or equal to 1.15 to meet the listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.02A (Table I) (2015). The 2017 revisions increased the maximum $FEV_1$ value for a woman of Plaintiff's age and height to 1.25. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.02A (Table I) (2017).

Here, Plaintiff underwent a spirometry on March 14, 2015. Her best pre-bronchodilator $FEV_1$ was 1.59, which was 59% of the predicted value. (Tr. 43, 640.) Consequently, a bronchodilator was administered to open her air passages and Plaintiff was tested again. (*Id.* at 640.) The unexpected result of repeat testing was that Plaintiff's post-bronchodilator spirometry actually produced lower values rather than the pre-bronchodilator spirometry. (*Id.*) Her highest post-bronchodilator $FEV_1$ value was 0.54. (*Id.*) The ALJ concluded that because Plaintiff's best pre-bronchodilator value of 1.59 was greater than the 1.25 maximum $FEV_1$ value set for the in Table I, Plaintiff did not meet listing 3.02A. (*Id.* at 42-43.)

Plaintiff now argues that the ALJ was permitted to consider only Plaintiff's post-bronchodilator $FEV_1$ values when determining whether she met Listing 3.02A. (Docket Entry 12 at 4.) In support of her position, Plaintiff quotes the introductory language of the respiratory Listings. (*Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00E(2)(b)).) As noted above, Section 300E(2)(b) indicates that when a claimant's initial $FEV_1$ falls below a certain threshold, it triggers a duty to perform repeat testing after the administration of a bronchodilator. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 300E(2)(b). Like Plaintiff, a minority of courts have read the requirement to perform post-bronchodilator testing to include an additional requirement that the evaluator then rely only on those post-bronchodilator test results.[4]

---

[4] *See e.g., Eskew v. Astrue*, 462 F. App'x. 613, 615 (7th Cir. 2011) (unpublished) (holding that "only the highest post-bronchodilator result is used to assess the severity of the respiratory impairment" where claimant's post-bronchodilator results were higher than the pre-bronchodilator values); *Embrey v. Astrue*, No. CIV.A. TMD 10-2680M, 2012 WL 909219, at *3 (D. Md. Mar. 13, 2012);

The Commissioner counters that even when the duty to perform post-bronchodilator testing is triggered, the regulations do not require the evaluator to rely only on post-bronchodilator test results. (Docket Entry 14 at 10.) The majority of courts that have confronted the issue agree.[5] These courts note that Section 300E(1) provides, "[w]e use your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 300E(1). They have interpreted this provision to mean, as the Commissioner now argues, that "[t]he largest value among the test results is to be used, whether that value is from the claimant's pre-bronchodilator or post-bronchodilator testing." *Gwizdala*, 191 F.3d at 452.

The Fourth Circuit has not addressed this issue. Another court within this Circuit has noted that "decisional authority in the Fourth Circuit suggests that post-bronchodilator results should be *considered*, as they demonstrate how well a claimant responds to medication and the degree to which the impairment is reversible." *Belton*, 2012 WL 1354031, at *4–5 (citing *Sea*

---

*Ridgway v. Colvin*, No. 2:14-CV-105-TLS, 2016 WL 1567254, at *5 (N.D. Ind. Apr. 19, 2016) (applying *Eskew* where claimant's post-bronchodilator results were atypically lower than his pre-bronchodilator results).

[5] *See Gwizdala v. Comm'r of Soc. Sec.*, No. 98-1525, 191 F.3d 452 (Table), 1999 WL 777534, at *4 (6th Cir. 1999) (unpublished); *Deane v. Colvin*, 247 F. Supp. 3d 152, 164 (D. Mass. 2017) ("The relevant regulation, however, clearly refers to "the highest values of the $FEV_1$," without distinguishing between pre—and post-bronchodilator results."); *McKee ex rel. McKee v. Comm'r of Soc. Sec.*, No. 2:14-CV-609, 2015 WL 1299562, at *5 (S.D. Ohio Mar. 23, 2015) (discussing cases), *report and recommendation adopted sub nom. McKee v. Colvin*, 2015 WL 1637470 (S.D. Ohio April 13, 2015); *Sargent v. Colvin*, No. 3:12-CV-01905-AA, 2014 WL 792154, at *3 (D. Or. Feb. 23, 2014) ("Under the plain language of this listing, disability determinations are made by looking at the highest FEV value"); *Bumgarner v. Colvin*, No. 1:12-CV-000138-FDW, 2013 WL 3816604, at *4 (W.D.N.C. July 22, 2013) ("The Listing requires that the noted $FEV_1$ result be the highest of at least three trials, regardless of which tracing (before or after use of a bronchodilator) the result is taken from."); *Belton v. Astrue*, No. 4:11CV00021, 2012 WL 1354031, at *4–5 (W.D. Va. Apr. 16, 2012), *report and recommendation adopted sub nom. Belton v. Comm'r of Soc. Sec.*, No. 4:11-CV-00021, 2012 WL 4459033 (W.D. Va. May 30, 2012).

*"B" Mining Co. v. Dunford*, 188 Fed.Appx. 191 (4th Cir. June 27, 2006); *Allen v. Dir., Office Workers' Comp. Programs, U.S. Dep't. of Labor*, 1995 WL 649877 (4th Cir. November 6, 2005). However, nothing indicates that the Fourth Circuit has explicitly or implicitly suggested that an evaluator must *exclusively* consider post-bronchodilator results. Neither do the regulations contain any instruction to rely only on post-bronchodilator values—even when post-bronchodilator testing must be performed. The undersigned therefore agrees with the majority of courts that the Listing instructs the Commissioner to rely on the highest $FEV_1$ value, whether that value was recorded pre- or post-bronchodilator.

In light of the foregoing, the Court finds that the ALJ's decision is not based upon an incorrect application of the relevant law. Specifically, the ALJ properly found that Plaintiff did not meet Listing 3.02A. (Tr. 42-43.) As noted above, Plaintiff's highest $FEV_1$ would have had to have been 1.25 or less to meet Listing 3.02A. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.02A (Table I) (2017). Plaintiff's highest pre-bronchodilator $FEV_1$ value was 1.59, and her highest post-bronchodilator value was 0.54. (*Id.* at 42-43, 640.) The ALJ considered Plaintiff's results as well as her argument she met the listing based on her best post-bronchodilator value. (*Id.* at 42-43.) However, the ALJ concluded "[t]he Listings require reliance on the best/highest trial, which in this case reflected a best . . . $FEV_1$ of 1.59 . . . which exceed[s] the listing criteria." (*Id.*) This analysis mirrors that of the majority of courts. Thus, the undersigned cannot say that the ALJ's finding that Plaintiff did not meet listing 3.02 is based upon an incorrect application of the relevant law. His decision must therefore be affirmed.

## VI.  CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence and based upon a correct application of the relevant law.   Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings Reversing the Decision of the Commissioner (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED,** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

May 29, 2018
Durham, North Carolina